## CLARKE *v.* CLARKE.

ERROR TO THE SUPREME COURT OF ERRORS OF THE STATE OF CONNECTICUT.

No. 216.   Argued April 9, 10, 1900. — Decided May 21, 1900.

It is a doctrine firmly established that the law of a State in which land is situated controls and governs its transmission by will or its passage in case of intestacy.

The courts of a State where real estate is situated have the exclusive right to appoint a guardian of a non-resident minor, and vest in such guardian the exclusive control and management of land belonging to said minor, situated within the State.

THIS writ of error was procured for the purpose of obtaining the reversal of a judgment of the Supreme Court of Errors of the State of Connecticut, which, as respected real estate situated in the State of Connecticut, refused to follow and apply a judgment of the Supreme Court of South Carolina interpreting and construing the will of Julia H. Clarke.

The facts from which the legal questions presented arise are as follows:

Henry P. Clarke and Julia Hurd intermarried in New York in 1886, and immediately thereafter went to South Carolina, where they afterwards continuously resided. Mrs. Clarke died on February 10, 1894, owning real and personal property in South Carolina, and also real estate situated in Connecticut. Two daughters survived, one, Nancy B., aged five years, the other, Julia, aged about two months.

A will and codicil executed by Mrs. Clarke were duly established in the court of probate for Richland County, in the State of South Carolina. The will contained the following provisions:

"Fifth. The rest, residue and remainder of my estate, real and personal, of whatever description or wheresoever situated, I give, devise and bequeath as follows: One half thereof to my husband, Henry P. Clarke, and one half thereof to my said husband in trust for my daughter, Nancy, until she becomes twenty-five years of age, and then to pay the whole sum over to her. But if she shall marry before that age with the consent and approval of her father, or in case of his death, with the consent and approval of her then guardian, then I direct that one half of her share shall be paid to her upon her marriage and the other half when she becomes twenty-five.

"In case I shall leave surviving me one or more children beside my daughter Nancy, then I direct that the said rest, residue and remainder of my estate shall be divided equally among my said husband and all of my children, share and share alike, my husband and my children sharing per capita, and the shares of said children to be held in trust as above provided in the case of Nancy as being the only one.

"And I give, devise and bequeath the said rest, residue and remainder as aforesaid, to each and to their heirs and each of them forever."

The infant daughter Julia died shortly after her mother, in the month of May, 1894, owning no property in Connecticut except such as had devolved on her under the will of her mother.

Henry P. Clarke, as executor of the last will and testament of his wife, Julia H. Clarke, and trustee of the estate of Nancy B. Clarke, his infant daughter, brought suit in June, 1895, against said Nancy B. Clarke, in the Circuit Court for the Fifth Judicial Circuit of South Carolina, praying for the "judgment and direction of the court in regard to the true construction of said will, and especially the fifth and residuary paragraph thereof, and as to his powers and duties as such executor and trustee under said will in the premises, and for such further relief as may be just and proper."

A guardian *ad litem* was appointed for the infant defendant, who duly answered, and, after hearing, the court decreed that the will of the testatrix, Julia H. Clarke, worked an equitable conversion into personalty at the time of her death of all her real estate of whatsoever description and wheresoever situated; that the plaintiff as executor should receive, administer and account for the same as personalty; that he was, by the said will, authorized and empowered to sell and convey the same for the purpose of executing the will, and leave was given to apply for further orders and directions upon the foot of the decree. This judgment was, upon appeal, affirmed by the Supreme Court of South Carolina. 46 South. Car. 230.

The controversy in the courts of Connecticut was commenced by the filing, in the probate court for the district of Bridgeport, of a petition on behalf of Henry P. Clarke as administrator of the estate of his deceased daughter Julia Clarke, he having been appointed such administrator by the proper court in Connecticut. In the petition it was recited that Julia had died intestate, leaving *real estate* in the district, and that divers persons claimed to be entitled to have the said real estate set apart and distributed to them, and the court was asked to hear the claims of said parties and ascertain to whom the estate should be apportioned. A guardian *ad litem* having been appointed by the court for Nancy B. Clarke, the application was heard, and a decree was entered finding that she was the sole heir and distributee of her deceased sister Julia. The Connecticut law, which devolved on Nancy the whole of the real estate of Julia, differed from the law of South Carolina, by which the estate of Julia, both real and personal, passed equally to the father and to Nancy the surviving sister.

Henry P. Clarke, individually, appealed from the decision of the probate court to the Superior Court of the county of Fairfield. That court filed its findings stating the facts concerning the controversy, and reserved the resulting questions of law to the Supreme Court of Errors of the State, which court recommended that the decree of the probate court be affirmed. 70 Conn. 195. Thereupon the Superior Court of Fairfield County entered a decree in conformity to the mandate to it directed.

In the body of the decree the court referred to the contention between the parties, and stated the one pertinent to the issue now before us, as follows:

"Upon the facts aforesaid the appellant claimed and contended that the decision and decree of the Circuit Court for the Fifth Judicial Circuit of the State of South Carolina, being the Court of Common Pleas and general sessions for Richland County, affirmed by the Supreme Court of said State, 46 South Car. 230, in the case of Henry P. Clarke, executor and trustee, against Nancy B. Clarke, in its interpretation and construction of the will of the said Julia H. Clarke, to the effect that said will worked an equitable conversion into personalty at the time of her death of all the real estate of the testatrix, wherever situated, was binding and conclusive on the courts of this State in his favor in this proceeding, and that to hold otherwise would be to deny full faith and credit to the judicial proceedings and judgment of the State of South Carolina, and would be in contravention of section 1, article 4, of the Constitution of the United States."

An appeal was taken from the decree of the Superior Court. The Supreme Court of Errors of Connecticut, although it remarked that the appeal was unnecessary, as its prior judgment had settled the controversy between the parties, yet entertained the appeal, and affirmed the decree below.   70 Conn. 483.

*Mr. Samuel F. Phillips* and *Mr. Leroy F. Youmans* for plaintiff in error.   *Mr. Frederic D. McKenney* was on *Mr. Phillips's* brief.

*Mr. John H. Perry* for defendants in error.   *Mr. Winthrop H. Perry* was on his brief.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The Supreme Court of Errors of Connecticut held that the will of Julia H. Clarke, wife of the plaintiff in error, did not at the time of her death work an equitable conversion into per-

sonalty of the real estate situated in the State of Connecticut, and, consequently, that though personal property might be governed by the law of the domicil, real estate within Connecticut was controlled by the law of Connecticut, and hence that Nancy B. Clarke, as surviving sister of Julia Clarke, inherited, under the laws of Connecticut, to the exclusion of the father, the interest of the deceased sister Julia in the real estate in Connecticut which had passed to Julia by the will of her mother. It is assigned as error that in so deciding the Connecticut court refused full faith and credit to the decree of the courts of South Carolina, wherein it was adjudged that the will of Mrs. Clarke had the effect of converting her real estate, *wherever situated*, into personalty; the deduction being that as under the South Carolina decision the real estate situated in Connecticut became personal property, it was the duty of the Connecticut court to have decided that the land passed by the law of South Carolina and not according to the law of Connecticut, and hence, that instead of treating the daughter Nancy as the owner of the whole of the real estate, it should have recognized the father as having a half interest therein. And the correctness of this proposition is really the only question which the assignment of errors presents for our decision.

The argument at bar has taken a wide range, and the various legal principles by which it was deemed that a solution of the controversy might be facilitated have been supported by a very elaborate reference to authority. We do not deem it necessary, however, to critically review the cases cited and the observations of text writers which were relied on in argument, nor to analyze all the contentions which it is asserted those authorities sustain. We say this, because, in our opinion, the matter at issue may be disposed of by the application of two well defined and elementary legal principles.

It is a doctrine firmly established that the law of a State in which land is situated controls and governs its transmission by will or its passage in case of intestacy. This familiar rule has been frequently declared by this court, a recent statement thereof being contained in the opinion delivered in *De Vaughn v. Hutchinson*, 165 U. S. 566, where the court said (p. 570):

"It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances. *United States* v. *Crosby*, 7 Cranch, 115; *Clark* v. *Graham*, 6 Wheat. 577; *McGoon* v. *Scales*, 9 Wall. 23; *Brine* v. *Insurance Co.*, 96 U. S. 627."

Now, in the case at bar, the courts of Connecticut, construing the will of Mrs. Clarke, have declared that, by the law of Connecticut, land situated in that State, owned by Mrs. Clarke at her decease, continued to be, after her death, real estate for the purpose of devolution of title thereto. The proposition relied on, therefore, is this, although the court of last resort of Connecticut (declaring the law of that State) has held that the real estate in question had not become personal property by virtue of the will of Mrs. Clarke, nevertheless it should have decided to the contrary, because a court of South Carolina had so decreed. This, however, is but to argue that the law declared by the South Carolina court should control the passage by will of land in Connecticut, and therefore is equivalent to denying the correctness of the elementary proposition that the law of Connecticut where the real estate is situated governed in such a case. It is conceded that, had the will been presented to the courts of Connecticut in the first instance and rights been asserted under it, the operative force of its provisions upon real estate in Connecticut would have been within the control of such courts. But it is said a different rule must be applied where the will has been presented to a South Carolina court and a construction has been there given to it; for, in such a case, not the will but the decree of of the South Carolina court, construing the will, is the measure of the rights of the parties, as to real estate in Connecticut. The proposition, when truly comprehended, amounts but to the contention that the laws of the respective States controlling the transmission of real property by will, or in case of intestacy, are operative only, so long as there does not exist in a foreign jurisdiction a judgment or decree which in legal effect has changed the law of the situs of the real estate. This is but to contend that what cannot be

done directly can be accomplished by indirection, and that the fundamental principle which gives to a sovereignty an exclusive jurisdiction over the land within its borders is in legal effect dependent upon the non-existence of a decree of a court of another sovereignty determining the status of such land. Manifestly, however, an authority cannot be said to be exclusive, or even to exist at all, where its exercise may be thus frustrated at any time. These conclusions are not escaped by saying that it is not the law of Connecticut which conflicts with the interpretation of the will adopted by the South Carolina court, but the decision of the court of Connecticut which does so. In this forum, the local law of Connecticut as to real estate is the law of that State as announced by the court of last resort of that State.

As correctly observed in the course of the opinion delivered by the Supreme Court of Errors of Connecticut, the question as to the operative effect of the will of Mrs. Clarke, upon the status of land situated in Connecticut, was one directly involving the mode of passing title to lands in that State. This resulted from the fact that if the will worked a conversion into personalty immediately upon the death of Mrs. Clarke, as contended, it necessarily vested her executor with authority at once to sell and convey the real estate in Connecticut by a deed sufficient, under the laws of that State, to transfer title to real estate—a power which was held by the courts of Connecticut not to have been conferred. Had the executor assumed to exercise such a power, however, the validity or invalidity of a conveyance thus executed would have been one exclusively for the courts of Connecticut to determine, just as would have been the question of the sufficiency of the will to vest title. Such being the case, there is no basis for the contention that it was not the exclusive province of the courts of Connecticut to determine, prior to the execution of such a conveyance, whether or not the power to do so existed.

As further observed by the Connecticut court, whether Mr. Clarke, as executor and trustee under the will of his wife, had any power, duty or estate with respect to lands situated in Connecticut, depended upon the laws of that State. The courts of

the domicil of Mrs. Clarke could properly be called upon to construe her will so far as it affected property which was within or might properly come under the jurisdiction of those tribunals. If, however, by the law as enforced in Connecticut, land in Connecticut owned by Mrs. Clarke at her decease was real estate for all purposes, despite the provisions contained in her will, that land was a subject-matter not directly amenable to the jurisdiction of the courts of another State, however much those courts might indirectly affect and operate upon it in controversies, where the court, by reason of its jurisdiction over persons and the nature of the controversy, might coerce the execution of a conveyance of or other instrument incumbering such land.

And the cogency of the reasons just given is further demonstrated by considering the case from another though somewhat similar aspect. The decree of the South Carolina court, which, it is contended, had the effect of converting real estate situated in Connecticut into personal property, was not one rendered between persons who were *sui juris.* Nancy B. Clarke, one of the parties to the suit in South Carolina, and whom the Connecticut court has held inherited, to the exclusion of the father, under the laws of Connecticut, the whole of the real estate belonging to her sister, was a minor. She was therefore incompetent, in the proceedings in South Carolina, to stand in judgment for the purpose of depriving herself of the rights which belonged to her under the law of Connecticut as to the real estate within that State. Neither the executor or trustee under the will, or the guardian *ad litem,* or any other person assuming to represent the minor in South Carolina, had authority to act for her *quo ad* her interest in real estate beyond the jurisdiction of the South Carolina court, and which was situated in Connecticut.

It cannot be doubted that the courts of a State where real estate is situated have the exclusive right to appoint a guardian of a non-resident minor, and vest in such guardian the exclusive control and management of land belonging to said minor, situated within the State. This court had occasion to consider and pass upon this doctrine in the case of *Hoyt* v. *Sprague,* 103 U. S. 613, and, in the course of the opinion, it was said (p. 631):

" One of the ordinary rules of comity exercised by some European States is to acknowledge the authority and power of foreign guardians, that is, guardians of minors and others appointed under the laws of their domicil in other States. But this rule of comity does not prevail to the same extent in England and the United States. In regard to real estate it is entirely disallowed; and is rarely admitted in regard to personal property. Justice Story, speaking of a decision which favored the extraterritorial power of a guardian in reference to personal property, says: ' It has certainly not received any sanction in America, in the States acting under the jurisprudence of the common law. The rights and powers of guardians are considered as strictly local; and not as entitling them to exercise any authority over the person or personal property of their wards in other States, upon the same general reasoning and policy which have circumscribed the rights and authorities of executors and administrators.' (Story, Confl. Laws, secs. 499, 504, 504a. And see Wharton, Confl. Laws, secs. 259–268, 2d ed. ; 3 Burge, Colon. & For. Laws, 1011.) And some of those foreign jurists who contend most strongly for the general application of the ward's *lex domicilii* admit that, when it comes to the alienation of foreign assets, an exception is to be made in favor of the jurisdiction within which the property is situate, for the reason that this concerns the ward's property, and not his person. (Wharton, secs. 267, 268)."

Of what efficacy, however, would be the power of one State to control the administration, through its own courts, of real estate within the State, belonging to minors, without regard to the domicil of the minor, if all such real estate could be disposed of and the administration thereof be controlled by the decree of the court of another State. Here, again, the argument relied on must rest upon the false assumption that an exclusive power which confessedly exists in the courts of one jurisdiction may be wholly destroyed or rendered nugatory by the action of the courts of another jurisdiction in whom is vested no authority whatever on the subject. It results that no person before the South Carolina court, assuming to speak for the estate of Nancy B. Clarke, represented any real property of said Nancy which

was not within the territorial jurisdiction of South Carolina, and the decree, therefore, could not affect land in Connecticut, an interest which was not before the court.

When, therefore, Henry P. Clarke, as administrator, appointed in Connecticut, of the estate of his deceased daughter, Julia Clarke, applied to the Connecticut probate court to determine who was entitled to the " real estate " owned by the intestate, it was the province of the Connecticut court to decide such question solely with reference to the law of Connecticut.   Its power in this regard was not limited by the fact that in order to determine who owned the real estate, it was necessary for the court to construe the will of the mother of the intestate, and to determine what effect it had upon the status of the real estate under the law of Connecticut.   Having a right to decide these questions, it was not constrained to adopt the construction of the will which had been announced by the court of South Carolina. ` From these conclusions it follows that because the court of Connecticut applied the law of that State in determining the devolution of title to real estate there situated, thereby no violation of the constitutional requirement that full faith and credit must be given in one State to the judgments and decrees of the courts of another State, was brought about, as the decree of the South Carolina court, in the particular under consideration, was not entitled to be followed by the courts of Connecticut, by reason of a want of jurisdiction in the court of South Carolina over the particular subject-matter which was sought to be concluded in Connecticut by such decree.   *Thompson* v. *Whitman,* 18 Wall. 457 ; *Cole* v. *Cunningham,* 133 U. S. 107 ; *Grover & Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287 ; *Simmons* v. *Saul,* 138 U. S. 439 ; *Reynolds* v. *Stockton,* 140 U. S. 254 ; *Cooper* v. *Newell,* 173 U. S. 555.

*Judgment affirmed.*