Booth, J.,
delivered the opinion of the court:
This is a case under a special jurisdictional statute. The claimants, Hannah S. Crane and others, contend for a one-sixtli interest in a certain lot Or parcel of real estate purchased by the Government, and upon which it located the branch mint at San Francisco, Cal. The property in question originally belonged to Joseph B. Curtis, Philo H. Perry, and Samuel PI. Ward, copartners doing business under the firm name of Curtis, Perry & Ward. The partnership was organized for and engaged in the business of assaying gold, forming the same into bars, and under the act of September 30,1850 (9 Stat. L., 581), coined and issued gold coins. The Congress on July 3, 1852, passed an act (10 Stat. L., 11) to establish a branch mint of the United States in California. In pursuance of said legislation the proper officers of the Treasury Department entered into a contract with Joseph R.
Curtis for the purpose of securing a suitable building and .proper furnishings and equipments to carry into execution the provisions of the above law. This contract, made on the 15th day of April, 1853, was, notwithstanding its personal character, indisputably made- for and on behalf of the co-partnership of Curtis, Perry & Ward. Samuel PI. Ward, the junior partner just named, died at sea while on a voyage to the Sandwich Islands on March 22, 1853, some time previous to the execution of the above contract. This fact was unknown to his copartners at the time of the execution of the contract, and was not brought home to them until April 21, 1853. The unknown and unexpected death of said Ward furnishes the complications out of which this controversy arises. Said Ward died testate, leaving to his widow, Emily II. S. Ward, nine-tenths of his entire estate, both real and personal, and the remaining one-tenth to a near relative; his copartners, Joseph R. Curtis and Philo PI. Perry, were appointed his executors and given full power and authority to manage, sell, dispose of, and control all his estate, real, personal, and mixed.
The contract made with Curtis, as before observed, called for the sale to the Government of the lot and building, together with its furnishings and equipment, belonging to the copartnership. Ward’s will was admitted to probate, and *352 Philo H. Perry alone qualified as executor of his estate. All of Ward’s estate, including all the property covered by the Curtis contract, was duly inventoried and appraised, the appraisers fixing the value of the property here in suit at $40,000, one-third of which, $13,333.33, belonged to Ward’s estate. Perry, as executor aforesaid, with full power and authority so to do, conveyed, or at least attempted to convey, to Curtis all of Ward’s interest in said partnership property, paying the full consideration mentioned by the board of appraisers, nine-tenths of which amount was paid to Emily H. S. Ward, which she receNed with full knowledge of the whole transaction and without the slightest protest or objection. In 1850 the legislature of California passed an act changing the law of property as respects husband and wife by creating an estate in community. (Laws of 1850, p. 255, sec. 11.) The statute of 1850 creating the community estate was first construed by the Supreme Court of California in 1855 (Beard v. Knox, 5 Cal., 252), wherein the court held that immediately upon the death of one communal owner one-half of the community estate vested in fee simple in the survivor, and was not subject to testamentary disposition, notwithstanding the fee-simple title of the whole originally stood in the name of the decedent. In March, 1854, Emily IT. S. Ward and her co-legatees under the will of her husband filed a bill in equity in the District Court for the Northern District of California against said Curtis and Perry, surviving partners of her late husband. The allegations of the bill contain a full recital of all the transactions between Curtis and Perry and between Curtis and the Government. It is replete with charges of fraud and circumvention as between the surviving partners and the complainants, but nowhere repudiates, disaffirms, or seeks to annul the sale of said premises to the defendants. The bill concludes with a prayer for an accounting and seeks a division of alleged profits supposed to have been earned by reason of the aforesaid Curtis contract with the defendants. The Secretary of the Treasury was notified of the filing of this bill, because, under the Curtis contract and before the filing of said bill, Curtis had received $100,000 on his con *353 tract from said officer. The case was never brought to trial and subsequently dismissed by complainants.
In October, 1865, Emily Ií. S. Ward conveyed all her alleged interest in the property here in suit to James L. King, the consideration expressed in the deed being- $100. In 1867 King commenced an action of ejectment in the District Court for the Fifteenth Judicial District of California against the superintendent of said branch mint, who was in possession of and operating the same for the Government. This suit was decided adversely to complainant’s contention in the trial court, but subsequently reversed and remanded by the Supreme Court of California. (King v. La Grange, 50 Cal., 328.) The case again reached the Supreme Court of the State on its second trial, and was finally determined in favor of the plaintiff, in effect holding that the will of said Samuel IT. Ward disposed of only such an estate as he could by law devise, which did not include his widow’s one-half interest in the communal property, and that she had performed no act, nor acquiesced in the performance of any, which constituted a ratification of the alleged disposition of her communal interest .in her husband’s property since his death, fully sustaining King’s contention and upholding his assertion to an undivided interest in the undivided one-sixth interest formerly belonging to his grantor, Mrs. Ward.
The various transfers by which the claimants claim title 'to the property are set forth in the findings; they are not challenged in any way, and require no comment. It does appear, however, and is a fact to which we shall hereafter refer, that subsequent to Ward’s death his widow returned East, and Perry, the executor of Ward’s will, removed to New York, where he filed in the Supreme Court of said State a petition for final discharge as such executor, to which Mrs. Ward was a party and to which she did not object.
The jurisdictional act (33 Stat. L., 815) provides as follows:
■“AN ACT Referring the claim of Hannah S. Crane and others to the Court of Claims.
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That jurisdiction be, and the same is hereby, conferred on *354 the Court of Claims to hear the claim of Hannah S. Crane and others for the value of certain real property in the city of San Francisco, in the State of California, in -which they claim an undivided one-sixth interest, upon the evidence already filed in said court and such additional legal evidence as may be hereafter presented on either side; and if said court shall find that said parties acquired a valid title to said real property as claimed, said court shall award the said parties the market value of the undivided one-sixth of said property at the time possession was taken of it by the United States. And before receiving the same, all of said parties shall execute a.release to the United States for all right, title, and interest whatsoever in and to the said property, and any defense, set-off, or counter-claim ma-y be pleaded by the United States, as defendants, as in cases within the general jurisdiction of the court, and either party shall have the same right of appeal as in such cases.”
Claimants’ case, viewed from any aspect, is devoid of equitable consideration. If the preference given is to be sustained at all, it must rest upon a strict adherence to legal construction as decided by the Supreme Court of California in the two cases heretofore cited. The cases relied upon as stare decisis were between parties strangers to this record, and if decisive of this case limit the court to what the Congress might well have done without any reference to the court, paid the claim in full, for it was possessed of all the information previously certified under a Bowman Act reference in 1896. The case of United States v. Lee (106 U. S., 196), settled the question of the right of the plaintiffs to maintain in the courts of California the suits which they instituted respecting the title to the land in controversy as between the parties thereto; but it has never been held, so far as we are able to ascertain (certainly no authority has been cited in the brief of counsel for claimants), that any such judgment concluded the United States or in anywise estopped it from asserting its rights in the premises. In United States v. Lee (p. 222) Mr. Justice Miller, speaking for the court, said: “ * * the Government is always at liberty, notwithstanding any such judgment, to avail itself of all the remedies which the law allows to every person, natural or artificial, for the vindication and assertion of its rights. Hence,- taking the present case as an illustration, the
*355 United States may proceed by a bill in chancery to quiet its title, in aid of which, if a proper case is made, a writ of injunction may be obtained. Or it may bring an action of ejectment, in which, on a direct issue between the United States as plaintiff and the present plaintiff as defendant, the title of the United States could be judicially determined.” The above quotation from the Lee case, supra, is the court’s affirmance of the decision of the same court in Carr v. United States (98 U. S., 433). In the latter case the question of the conclusiveness of a judgment of a court of competent jurisdiction-in an ejectment suit brought by an alleged owner of the real estate against agents of the Government in possession, and claiming the right of same in virtue of such agency, was squarely decided, the court holding that the United States could not be estopped from the assertion of its rights by proceedings against its tenants or agents. It will be observed that the Carr case was a bill in equity filed by the United States to quiet the title to certain property in San Francisco, Cal., claimed by the Government, and as to which the state courts had previously rendered decisions adversely to the Government’s contention in direct proceedings against its own agents in possesion by its authority and consent. Three suits, at least two of which went directly to validity of title, and in one of which the United States district attorney appeared for and on behalf of the defendants, were decided in favor of the plaintiff. The case is strikingly similar to the one at bar, and while it is true that the decisions just mentioned were by the lower courts, it is nevertheless true that the question of title was fully gone into, and in so far as the parties thereto are concerned is res adjudicata.
The Government is not suable except by its own consent, and until such consent is given by appropriate legislation no judgment or decree of any court concludes its right to assert its defenses or prefer its claims. (United States v. Lee, 106 U. S., 196; Carr v. United States, 98 U. S., 433; Scranton v. Wheeler, 57 Fed., 807.)
The jurisdictional statute under which we are now proceeding refutes by its terms the contention of claimants herein. If the court is estopped from entering into the merits of the controversy and determining for itself the *356 validity of the title to the property in suit, then the reference of the claim was an idle proceeding. It would indeed be a travesty upon justice to refer to the Government’s tribunal a claim as to which the court had nothing to do except indulge in mathematical calculation and enter judgment accordingly. The act would simply resolve itself into legislation designed to revive and pay a claim previously litigated to conclusion, but lost to settlement by lapse of time. The Congress never so intended in the act of jurisdiction. We are charged with according full probative effect to the evidence already filed in the case, and permitted to consider “ such additional legal evidence as may be hereafter presented on either side.” The proceedings are to be in all respects, except as specifically modified, in accord with the general jurisdiction of this tribunal, and expressly reserving to the defendants the right of any defense available.
The Congress neither recognized the validity of the claim nor the validity of claimants’ title to the land in question. It did recognize the right to assert a claim and provided a forum wherein the respective rights of both parties to the case might be judicially determined and set at rest.
This court,, by entering into the merits of the claim as presented by the jurisdictiona], statute, does not in anywise contravene the well-established doctrine as laid down in Clarke v. Clarke (178 U. S., 186) and Wharton v. White (176 U. S., 484). These two cases establish beyond controversy that the Supreme Court will, in so far as it is possible to do so, conform to the rule of property as established by the supreme tribunal of a State respecting controversies concerning such property. In other words, where the decisions of the highest court of a State have definitely and conclusively established a rule of property the Supreme Court in interpreting the state law will follow, if possible, the decisions of the state court. The decision herein does not invade a settled rule of property as established by the Supreme Court of California; it in no wise ignores or contradicts the legal existence of a communal estate as between husband and wife; nor disregards settled law as to power of testamentary disposition over the same. It simply grants to the defendants their day in court, a right paramount in extent, the *357 denial of which is fatal to all judgments or decrees rendered either against the person or property of one not a party to the record. The defendants are not concluded by the decisions of the state court of California from resorting to a bill to quiet title or fropi commencing a suit in ejectment wherein the “ title of the United States could be judicially determined.” (Lee case, supra.) t
The defendants are now, and for the first time, asserting a direct proceeding that the facts and circumstances surrounding the transaction as now presented do not bring the same within the decisions of the Supreme Court of California rendered many years ago.
We have amended the findings; we have considered new testimony; and in all respects treated the case as pending-under the general jurisdiction of the court, as modified by the jurisdictional statute.
The findings disclose that claimants’ grantor, Mrs. Ward, was, at the time of "the conveyance from Perry to Curtis, fully, acquainted with the situation and in possession of the facts attendant thereon. It is true that she was ignorant of the extent of her estate in the land in question, and that the conveyance aforesaid did not, standing alone without ratification, transfer her undivided one-half interest in the communal property of her deceased husband. There can be no doubt that Ward intended to devise all the property here in suit; his devisees so understood it; his executors so understood it; and Mrs. Ward accepted without protest the value of the entire lot, including her communal interest therein, as fixed by the board of appraisers. In 1854, about one year subsequent to the above transfer, Mrs. Ward and her coleg-atees, evidently believing that the surviving partners of her deceased husband were attempting to or did overreach them in the sale to the United States of the partnership property, filed the bill in chancery heretofore mentioned. The United States was not a party to said proceeding, neither was any of its officers or agents mentioned as defendants therein. The gravamen of the complaint was fraud and deceit upon the part of Curtis and Perry, the only defendants to the bill, setting out in luee verbce the contract between Curtis and the United States. Not a word of com *358 plaint respecting the loss of title to her communal interest in the property, seeking only an accounting as between the parties to the transaction and an equitable and conscionable distribution of the profits arising from the conveyance aforesaid. The bill itself was subsequently dismissed by the complainants.
In 1855 the case of Beard v. Knox, supra, was decided by the supreme court of California. Under this decision Mrs. Ward became for the first time acquainted with the extent of her interest in the estate of her deceased husband and her title to the property in question. Remedies were then immediately available for the correction of this alleged injury. The courts of California were open to Mrs. Ward for the assertion of her claim, and suits to quiet title or. in ejectment were clearly maintainable. (Carr v. United States, supra.) No such proceedings were commenced by Mrs. Ward, but ten years thereafter, to wit, on October 25, 1865, as the findings show, she conveyed for a nominal consideration all her interest in the premises in question to one James L. King. In 1867 King asserts his claim of title with the successful result heretofore mentioned. (King v. La Grange, supra.) It is worthy of notice, however, that notwithstanding the judgment in favor of King, no attempt was ever made by him to enforce said judgment or recover possession of the disputed premises. On the contrary, King conveys to McLaughlin in 1879 for a recited consideration of $5 in gold, and to Crane and Boyd in 1867 for a recited consideration of $10 in gold.
It is indeed a strange proceeding, certainly inequitable, to now permit Mrs. Ward’s grantees to assert against- the defendants a claim which she permitted to repose for ten years without ever resorting to any established legal remedy, and which was notoriously open to disaffirmance or repudiation during this long period of time. There is absolutely nothing in the record which even hints at a repudiation of Perry’s acts in conveying all the estate of both Mr. and Mrs. Ward in the partnership property to Curtis. There is nothing to show that Mrs. Ward was dissatisfied with the transfer in question or sought to annul the same at any time subsequent to its execution. In 1855, prior to said conveyance to King, *359 Perry filed in the Supreme Court of New York a petition in which Mrs. Ward and all other cestui que trusts of Ward’s will joined, setting forth in detail his management of Ward’s estate, including the disposition of all the real estate here involved, with copy of Ward’s will annexed, which after reference to a referee for authentication was fully approved and said executor discharged without objection or protest.
As was said in Lafitte v. Godchaux (35 La. Ann., p. 161), a case cited in defendants’ brief, “ The genius of our law does not favor the claims of those who have long slept, upon their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of courts for relief under the operation of a newly discovered technical error in some ancient transaction or settlement.”
' If the facts found in this case do not constitute a ratification of an act done by one without authority to act in the first instance, it is difficult to perceive how the doctrine of ratification can be sustained.
This case was once before Congress upon findings of fact under the act of March 3,1883, commonly known as the Bowman Act. The findings so reported have been amended and some new findings made, but the action of the court under the Bowman Act as respects the findings then made has not been disturbed. The jurisdictional act admits of additional testimony and the new findings made are in strict accord with the new facts in the record.
The petition is dismissed.