CHARLES F. POND *v.* CLARA P. PORTER ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued January 7—decided March 2, 1954

*William H. Wood, Jr.,* pro se as guardian ad litem for unborn and undetermined beneficiaries.

*Douglass B. Wright,* with whom was *Roger Wolcott Davis,* for the defendant Centre Church.

*Edward McFadden, Jr.,* of the New York bar, with whom was *Spencer Gross,* for the defendants Harriet P. Glover et al.

*W. Arthur Countryman, Jr.,* with whom, on the brief, was *Eunice M. O'Neill,* for Langdon P. Marvin, the plaintiff's executor.

*Allan K. Smith* appeared for The Hartford-Connecticut Trust Company, trustee.

INGLIS, C. J. This action was brought originally in 1925 by writ and complaint praying an order for the sale of real property, located in Hartford, in which the plaintiff, Charles F. Pond, had a life estate under a codicil to the will of his grandmother, Harriet N. Pond. The court ordered the sale and directed that the proceeds thereof be paid to The Hartford-Connecticut Trust Company to be held by

it in trust to pay the net income to the plaintiff during his life and upon his death to pay "the principal of said trust fund to the . . . persons . . . who may then be lawfully entitled thereto under the will of Harriet N. Pond, deceased, or who may be otherwise lawfully entitled thereto, free from the trust hereby created . . .; the said trust fund being deemed to be the precise equivalent of the premises sold herein, and its beneficial ownership identical with that of said premises, if the same had not been sold."

Charles F. Pond died on December 9, 1949. The trustee filed its final account and prayed the court both for the approval of it and also for the ascertainment of the persons entitled to receive the principal of the trust fund. The court rendered judgment approving the trustee's account and directing the payment of one half of the principal of the fund to the executor of the will of Charles F. Pond and the other half to a child and two grandchildren of Clara F. Pond Porter. From that judgment several of the parties have appealed.

Harriet N. Pond died a resident of New York on April 24, 1892. She left a will and two codicils which were admitted to probate in the Surrogate's Court in the county and state of New York and thereafter in the Probate Court for the district of Hartford in this state. Three children, Charles Murray Pond, Anson Phelps Pond and Clara F. Pond Porter, survived. Charles Murray Pond died testate without issue on August 30, 1894. Anson Phelps Pond died intestate January 21, 1920, leaving his son, Charles F. Pond, the plaintiff, as his sole heir at law. Charles F. Pond at his death on December 9, 1949, left a widow but no issue. Clara F. Pond Porter died testate on October 8, 1927. She left two chil-

dren, Harriet Porter Glover and Frank Brinley Porter; the latter has died, leaving two children, Frank B. Porter, Jr., and James L. Porter.

In the codicil which devised the life estate in the Hartford property to Charles F. Pond, the testatrix, Harriet N. Pond, provided that if he "shall survive me, and shall die without issue him surviving, [the property] shall pass under the provisions of my . . . will, subject however to the life estate herein devised to him." Recourse, therefore, must be had to the terms of Harriet N. Pond's will to determine who is now entitled to the fund in the hands of the trustee. The clauses of the will which control are the tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth.[1] The judgment ordering

[1] "TENTH: All my real estate not hereinbefore devised, wheresoever the same may be situate, including the said house Number Forty-five (45) East Thirty-fourth Street, if my daughter Clara F. Pond shall die before me, and including my said Newport real estate if my said son Anson Phelps Pond shall die before me, I give and devise to my executors, the survivor of them and his successors, in trust, as soon as may be after my death, to convert the same into money, I hereby authorizing them and him to sell and convey the same at public or private sale, and for cash or upon credit, and meantime in further trust to enter into and upon and to take possession of the same, and to collect and receive the rents, income, issues and profits thereof and the proceeds of said real estate and the income thereof until sold and all my personal estate not hereinbefore specifically bequeathed, including the Fifty thousand dollars given to my said son Charles Murray Pond, if he shall die before me and including also all lapsed legacies, I give, devise and bequeath as follows: One-half thereof to my daughter Clara F. Pond if living; if not, I give, devise and bequeath the same to and among her issue if any; if none, I give, devise and bequeath the same to my sons Charles Murray Pond and Anson Phelps Pond, the issue of either who shall previously die to take the share to which their father would be entitled if living. If my daughter Clara F. Pond shall survive me, I give, devise and bequeath such one-half from and after her death to and among her issue, if any, and if none, I give, devise and bequeath the same as my said daughter shall appoint by Will, and should my said daughter die without issue and not having made such appointment, I give, devise and bequeath the same

the payment of the fund to those persons who are
now the representatives of Clara Pond Porter and

to my sons Charles Murray Pond and Anson Phelps Pond, the issue of
either who shall previously die to take the share to which their parent
would be entitled if living, and the share of either who shall die with-
out issue, I give, devise and bequeath to the other if living, and if
not to his issue if any.

"The other half thereof I give, devise and bequeath to my son
Anson Phelps Pond if living; if not, and if my son Anson Phelps
Pond shall leave a wife who shall survive me, I give and bequeath
out of such one-half the sum of Thirty thousand dollars to the New
York Life Insurance and Trust Company, in trust, for the benefit of
such wife, to take possession of the same, to invest and keep invested
the same, to collect and receive the income, interest, issues and profits
thereof and to apply the same to the use of such wife so long as she
shall live; and the residue of such one-half, and if my said son Anson
Phelps Pond shall leave no wife then surviving, the whole of such
one-half I give, devise and bequeath to his issue if any; if
none, I give, devise and bequeath the same as my said son Anson
Phelps Pond shall appoint by Will, and should my said son Anson
Phelps Pond die without issue and not having made such appointment,
I give, devise and bequeath the same to my son Charles Murray Pond
and my daughter Clara F. Pond, the issue of either who shall pre-
viously die to take the share to which their parent would be entitled
if living, and the share of either who shall die without issue I give,
devise and bequeath to the other if living, and if not, to the issue of
the other if any.

"ELEVENTH: Provided, however, as to the one-half of my residuary
estate herein given, devised and bequeathed for the benefit of my
said son Anson Phelps Pond, that if he shall survive me and shall
leave a wife him surviving, I give and bequeath out of such one-
half the sum of Thirty thousand dollars to the New York Life Insur-
ance and Trust Company in trust for the benefit of such wife, to
take possession of the same, to invest and keep invested the same,
to collect and receive the interest, income, issues and profits thereof,
and to apply the same to the use of such wife as long as she shall live.

"TWELFTH: If my said son Anson Phelps Pond shall leave a wife,
in whose favor the trust of Thirty thousand dollars herein created
shall take effect, then upon her death I give and bequeath such Thirty
thousand dollars to the persons who at the time shall be the Minister
and Officers of the Congregational Church of Hartford in the State
of Connecticut, called the Centre Church, and the survivors of them as
joint tenants, to be by them paid over to a Corporation to be forthwith
organized by them or with their co-operation for the purpose of es-
tablishing and maintaining a home for aged indigent men of Ameri-

Anson Phelps Pond was grounded upon the court's
conclusion that these clauses of Harriet N. Pond's

can birth, to be located at Hartford similar to those founded by
Lawson Ives in Hartford for aged women, with the privilege to each
inmate to have with him a relative or friend to take care of him. If
such a corporation shall be previously organized either pursuant to
other provisions of this my Will or otherwise the same may be paid
over to it instead of organizing a new corporation.

"THIRTEENTH: The share of my residuary estate which I have here-
inbefore given, devised and bequeathed to my daughter Clara F.
Pond, whether directly, or in case of the death of my son Anson
Phelps Pond, is to be held in trust for her benefit during her life by
the New York Life Insurance and Trust Company, and accordingly
I give, devise and bequeath the same for and during the life of my
said daughter Clara F. Pond to the said The New York Life Insurance
and Trust Company in trust to take possession of the same, to invest
and keep invested the same, to collect and receive the interest, in-
come, issues and profits thereof, and to apply the same to the use of
my said daughter Clara F. Pond.

"FOURTEENTH: The share of my residuary estate which I have here-
inbefore given, devised and bequeathed to my said son Anson Phelps
Pond, whether directly or in case of the death of my daughter Clara
F. Pond, is to be held in trust for his benefit during his life by the
New York Life Insurance and Trust Company and accordingly I give,
devise and bequeath the same for and during the life of my said son
Anson Phelps Pond to the said The New York Life Insurance and
Trust Company in trust to take possession of the same, to invest and
keep invested the same, to collect and receive the interest, income,
issues and profits thereof, and to apply the same to the use of my said
son Anson Phelps Pond, subject however to the specific provisions
in respect to this trust herein contained.

"FIFTEENTH: If at the termination of either of the trusts herein
created for the benefit of my daughter Clara F. Pond and my son
Anson Phelps Pond there shall be living no descendant of mine to
whom by the provisions of this Will the principal of the trust shall
go, and if the power of appointment in respect to such trust fund
herein given shall not be exercised, I give, devise and bequeath the
principal of such trust, so far as it shall thus lapse, to the persons who
at the time shall be the Officers and Minister of the Congregational
Church of Hartford, Connecticut, called the Centre Church and the
survivors of them as joint tenants, to be by them paid over to a Corpora-
tion to be forthwith organized by them or with their co-operation for
the purpose of establishing and maintaining a home for aged indigent
men of American birth to be located at Hartford similar to those
founded by Lawson Ives in Hartford for aged women, with the

will vested an absolute estate in one half of the residuum in Clara Pond Porter and an absolute estate in the other half of the residuum in Anson Phelps Pond. The principal question on this appeal is whether that conclusion is correct.

It is apparent from a reading of the tenth clause of the will that the testamentary scheme of the testatrix was that her residuary estate, including the remainder interest in the Hartford property, should be divided into two parts, one of which she devised and bequeathed for the benefit of her daughter, Clara Pond Porter, and the other for the benefit of her son Anson Phelps Pond. We will seek to determine her intention with respect to each of these halves separately, the primary question as to each of them being whether an absolute estate was given to the beneficiary named.

We first refer to the share set aside for the benefit of Clara Pond Porter, who in the will is called Clara F. Pond. In the tenth clause, the wording is: " ... I give, devise and bequeath as follows: One-half ... to my daughter Clara F. Pond. ..." There are, at that point, no further words of limitation. The will does not there say "for life," nor does it say "and her heirs and assigns" or "absolutely." Shortly thereafter, however, it is provided: "If my daughter Clara F. Pond shall survive me, I give, devise and bequeath such one-half from and after her death to and among her issue, if any. ..." In the thirteenth clause, the testatrix directs that this one-half share be held in trust for Clara Pond Porter's benefit and, quoting from this clause, "accordingly I give, devise

privilege to each inmate to have with him a relative or friend to take care of him. If such a corporation shall be previously organized either pursuant to other provisions of this my Will or otherwise the same may be paid over to it instead of organizing a new corporation."

and bequeath the same for and during the life of my said daughter Clara F. Pond to the said The New York Life Insurance and Trust Company in trust . . . to collect and receive the interest, income, issues and profits thereof, and to apply the same to the use of my said daughter." From the fact that this share was placed in trust for the life of Clara Pond Porter with directions to the trustee to pay over to her only the income during her life it is clear that the testatrix meant exactly what she said in the tenth clause: " . . . I give, devise and bequeath such one-half from and after her death to and among her issue, if any . . . ." In short, her intention was that Clara Pond Porter should take only a life estate.

In so construing this portion of the will, we are not violating the canon of construction that a clear bequest of an absolute estate is not to be cut down to a lesser estate by subsequent provisions unless those subsequent provisions are at least equally clear. See *Stanton* v. *Stanton,* 140 Conn. 504, 511, 101 A.2d 789. A bequest of an estate which when first made may appear to create an absolute estate may be cut down "by subsequent provisions of the instrument clearly showing that it was the testator's intention to give [a] lesser estate." *Meriden Trust & Safe Deposit Co.* v. *Squire,* 92 Conn. 440, 446, 103 A. 269. It is true that the omission of words customarily used to describe an absolute estate from the bequest to Clara Pond Porter, as that bequest is first made in the tenth clause, does not necessarily indicate an intention that the bequest be only of a life use. *Duncan* v. *Higgins,* 129 Conn. 136, 145, 26 A.2d 849. The omission is, however, a factor to be taken into consideration, and the later provisions of the will referred to above so clearly demonstrate that that was the intention of

the testatrix that there can be no doubt about it.

Having arrived at the conclusion that Clara Pond Porter took only a life estate, we face the next question: Who took this one-half share upon her death? The provision last quoted from the tenth clause would seem to carry the remainder after the life estate to the "issue, if any" of Clara Pond Porter. When she died she did leave issue, but the question is whether under the law the bequest to them was valid. Inasmuch as we are here dealing with the devolution of real estate located in Connecticut, the law of this state on the question is controlling. *Clarke's Appeal,* 70 Conn. 195, 210, 39 A. 155, aff'd, 178 U.S. 186, 191, 20 S. Ct. 873, 44 L. Ed. 1028; *Braman* v. *Babcock,* 98 Conn. 549, 558, 120 A. 150; *Bankers Trust Co.* v. *Greims,* 110 Conn. 36, 42, 147 A. 290.

The will became operative in 1892. At that time the Statute against Perpetuities was still in effect in this state. The provisions of that statute were: "No estate in fee simple, fee tail, or any less estate, shall be given by deed or will, to any persons but such as are at the time of the delivery of such deed, or death of the testator, in being, or to their immediate issue or descendants. . . ." General Statutes, Rev. 1888, § 2952. The effect of the statute was to render void a bequest to the issue generally of a living person unless the word "issue" was interpreted to mean the children of the living person or persons who themselves were alive at the death of the testator. *Warren* v. *Duval,* 124 Conn. 448, 452, 200 A. 804. It is, of course, true that if on a reasonable construction of the will it is found that the testator used the word "issue" in the sense of children the bequest is not invalidated by the statute. *Thames Bank & Trust Co.* v. *Adams,* 125 Conn. 656, 660,

7 A.2d 836. On the other hand, "[t]he word 'issue' when used as a word of purchase and unaffected by any circumstances showing a different intent means descendants of every degree." *Dolbeare* v. *Dolbeare,* 124 Conn. 286, 289, 199 A. 555. It is not the equivalent of "immediate issue" as that term is used in the statute. "Under this statute, as construed by this court, the issue or descendants of persons unborn at the death of a testator cannot take under his will; and a gift, devise, or bequest, which may by possibility offend against the statute in this respect is void and of no effect." *Tingier* v. *Chamberlin,* 71 Conn. 466, 469, 42 A. 718. As it is put in *Wheeler* v. *Fellowes,* 52 Conn. 238, 244, "Our statute is imperative, that the estate must be given to parties in being . . . or to the immediate issue of parties . . . in being. If by possibility the estate might be carried by the terms of the will to parties not . . . in being and who are not the immediate issue of parties . . . in being, the will in this respect is void."

There is nothing in the will itself or in the circumstances attendant upon its execution to indicate that the testatrix, by the use of the word "issue" in the bequest of the remainder after Clara Pond Porter's death, intended otherwise than to include all the issue of the life tenant to any degree. There is nothing to indicate that "issue" as she used it meant only the immediate issue of the life tenant. Indeed, it is apparent that the testamentary scheme with reference both to this particular bequest and to the disposition of the other half of the residue of the estate was to keep the property in the blood line of the testatrix for as long as possible. We are, therefore, forced to conclude that the half of the residue bequeathed to Clara Pond Porter for her life was intended upon her death to go to her issue whether

they were her children or whether they were her descendants of any degree. It follows that the bequest to the issue of Clara Pond Porter is void under the Statute against Perpetuities.

It is argued that this result may be avoided by the application of the doctrine of equitable conversion. At the very beginning of the tenth clause of the will, the testatrix directed that all of her real estate "not hereinbefore devised" be sold by her executors. We may assume that this direction applied to the remainder interest in the Hartford property after the death of Charles F. Pond. The contention is, therefore, that by applying the doctrine of equitable conversion the Hartford real estate is to be treated as personalty and its devolution is to be controlled by the law of New York rather than by the law of Connecticut. This contention is untenable. "The devise of land under a trust to sell does not remove the land from the power of the state of situs." 2 Beale, Conflict of Laws, § 251.4; see 3 Locke & Kohn, Conn. Probate Practice, p. 39. But that aside, the doctrine of equitable conversion "is not a fixed rule of law, but proceeds upon equitable principles which take into account the result which its application will accomplish." *Emery* v. *Cooley,* 83 Conn. 235, 239, 76 A. 529; *Anderson* v. *Yaworski,* 120 Conn. 390, 394, 181 A. 205. The result which would be accomplished by its application in the present case would be to permit the devolution of Connecticut real estate to be controlled by the law of New York. More than that, whether the property in question be regarded as realty or whether it be regarded as personalty, a devise or bequest of it to the issue of Clara Pond Porter was against the public policy of this state as expressed in the Statute against Perpetuities. If, therefore, we assume that

under New York law the bequest over to the issue of Clara Pond Porter would be valid, the application of the doctrine of equitable conversion would result in the nullifying of the public policy of this state. Certainly the doctrine ought not to be applied to accomplish that result. It would be inequitable. In passing upon the validity of the testatrix' attempted disposition of the remainder interest in the Connecticut property, we must continue to treat the property as real estate and therefore subject to the law of this state.

The alternative bequests of the remainder interest after the life estate of Clara Pond Porter are to whomever she might appoint by will or, failing any appointment, to Charles Murray Pond and Anson Phelps Pond or their issue. These alternative bequests never became operative because they were conditioned upon Clara Pond Porter's dying without issue and that condition was not fulfilled. No other substitutionary bequest of this remainder interest is made until the fifteenth clause of the will is reached. In that clause it is directed: "If at the termination of either of the trusts herein created for the benefit of my daughter Clara F. Pond and my son Anson Phelps Pond there shall be living no descendant of mine to whom by the provisions of this Will the principal of the trust shall go . . . I give, devise and bequeath the principal of such trust" to the minister and officers of the Centre Church for the purposes set forth in the fifteenth clause. Because of this provision the effect of our conclusion that the bequest of the remainder to the issue of Clara Pond Porter was void is not to render that remainder intestate. The bequest to the minister and officers of the Centre Church becomes substitutionary to the void bequest to Clara Pond

Porter's issue and is effective to carry one-half of the fund now in the hands of The Hartford-Connecticut Trust Company to the minister and officers of the Centre Church or their successors, to be administered as directed in the fifteenth clause of the will. *Beardsley* v. *Merry,* 136 Conn. 573, 578, 72 A.2d 829.

We turn now to a consideration of the provisions of the will relating to the second half of the residuary estate. In the tenth clause of the will, the testatrix said: "The other half thereof I give, devise and bequeath to my son Anson Phelps Pond if living . . . ." From that point on the rest of the clause is devoted exclusively to the disposition of this half of the estate in the event that Anson Phelps Pond should not survive the testatrix. Inasmuch as he did survive, this disposition does not directly affect the problem we have before us. The immediate problem is to determine whether the above-quoted portion of the clause gave Anson Phelps Pond an absolute estate or only a life use.

The eleventh clause of the will directs that, if Anson Phelps Pond survived the testatrix and died leaving a widow, $30,000 of this one-half of the residuum should be held in trust and the income thereof paid to the widow during her life. Upon her death, by the terms of the twelfth clause, the principal of that trust was to be paid to the minister and officers of the Centre Church. These provisions are indicative of an intent to give Anson Phelps Pond himself no more than a life estate. More significant than that, however, are the provisions of the fourteenth and seventeenth clauses. By the fourteenth clause it is provided that all of this share "is to be held in trust for [Anson Phelps Pond's] benefit during his life by the New

York Life Insurance and Trust Company and accordingly I give, devise and bequeath the same for and during the life of my said son Anson Phelps Pond to the said The New York Life Insurance and Trust Company in trust . . . to collect and receive the interest, income, issues and profits thereof, and to apply the same to the use of my said son." Then there is the further provision, in the seventeenth clause, that the trustee shall pay to Anson Phelps Pond out of the principal such sum as the executors of the will shall deem necessary to set him up in business. All of this manifests a clear intention that, except as otherwise specifically directed, Anson Phelps Pond should receive nothing but the income from the half of the estate here in question. Some support for this is also to be derived from the provisions of the fifth clause of the will. By that clause the testatrix devised to Anson Phelps Pond what is clearly only a life use of real property located in Newport, Rhode Island, with remainder over to his issue. It would appear that her testamentary plan was to prevent Anson Phelps Pond from dissipating any of the principal of her estate. On the whole, we must interpret the will as giving Anson Phelps Pond only a life estate in the one-half of the residue set aside for his benefit.

The startling thing about the will is that it contains no bequest over after that life estate. The tenth clause does provide that if Anson Phelps Pond should predecease the testatrix the share designated for his benefit should go to his issue or appointee, subject to a $30,000 trust for the benefit of his widow. But when the will comes to a disposition of the share in the event that Anson Phelps Pond should survive the testatrix there is no bequest of the remainder estate. This we do not take

to be an indication that the testatrix intended to leave him an estate in fee. The evidence to the contrary set forth above is too overwhelming to permit of such a surmise. We believe that she fully intended to include a bequest of the remainder to his issue, but in the maze of the involved and complicated dispositive provisions she simply forgot to include such a bequest.

We must take the will as we find it. We are not permitted to read into it some provision for the disposition of the remainder interest in this one-half share which is not there. The consequence is that this remainder interest also passes to the minister and officers of the Centre Church or their successors under the terms of the fifteenth clause of the will.

There was introduced in evidence an exemplified copy of proceedings had in the Supreme Court of New York in 1920. In those proceedings the New York Life Insurance and Trust Company, as trustee of the trust for the benefit of Anson Phelps Pond under the will of Harriet N. Pond, was the plaintiff, and the defendants were Charles F. Pond, individually and as administrator of the estate of Anson Phelps Pond, and the minister and officers of the Centre Church and The First Church of Christ in Hartford, which was stated to be the successor of the Centre Church. Judgment in the action was entered on October 27, 1920. Thereby the trustee's account was approved, a finding was made as to what were the specific assets in the hands of the trustee, and the trustee was directed to pay those assets over to Charles F. Pond individually. Although this amounted to an adjudication that Charles F. Pond as the sole issue of Anson Phelps Pond was entitled to the remainder interest in the half of the estate of Harriet N. Pond set aside for

Anson Phelps Pond's benefit, it is not an adjudication which is conclusive in the present proceedings. This is true for two reasons: First, the property now to be disposed of was not included in the assets concerning which the New York court rendered judgment. Second, even though the New York court had undertaken to order a disposition of the Connecticut real property, its judgment could not have been effective to do so because it lacked jurisdiction. *Clarke's Appeal,* 70 Conn. 195, 209, 39 A. 155, aff'd, 178 U.S. 186, 191, 20 S. Ct. 873, 44 L. Ed. 1028.

On the whole case, our conclusion is that the principal fund in the hands of The Hartford-Connecticut Trust Company should be paid to the persons who are the officers and minister of the Congregational Church of Hartford known as the Centre Church or their successors, to be administered in accordance with the provisions of the fifteenth clause of the will of Harriet N. Pond.

There is error, the judgment is set aside and the case is remanded with direction to render judgment approving the trustee's account and ordering a distribution of the principal fund in accordance with this opinion.

In this opinion the other judges concurred.