EMILY F. McFARLAND ET AL. v. CHASE MANHATTAN BANK, N. A., TRUSTEE (ESTATE OF JOHN H. BREWSTER), ET AL.

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 144771
AT BRIDGEPORT

Memorandum filed June 5, 1973

*Thompson, Weir & Barclay,* of New Haven, for the plaintiffs.

*Durey & Pierson,* of Stamford, for the named defendant.

*Hirschberg, Pettengill, Strong & Nagle,* of Greenwich, for Charles S. Wilcox, coexecutor under the will of E. Franklin Brewster, et al.

*Jay W. Jacobs,* of Greenwich, for the defendant Ridgway B. Knight et al.

*Nevas, Nevas & Rubin,* of Westport, for the defendant Leo Nevas, guardian ad litem for any unborn and unascertained persons.

SADEN, J.   This is an appeal from an order of the Probate Court for the district of Westport entered on September 30, 1971, allowing the account of the defendant Chase Manhattan Bank as surviving trustee under the will of John H. Brewster, deceased, and as executor of the will of Margaret Owens Brewster, deceased.

## I

It appears that Margaret Owens Brewster, the life tenant of the trust estate under the will of John H. Brewster, died on December 14, 1970, and that the above account was filed as of that date showing distribution to two named distributees.  The plaintiffs claim that the will of John H. Brewster is uncertain and that therefore the Chase Manhattan Bank in its two fiduciary capacities should not have

purported to construe the will, to take any position with respect to its meaning, or to have shown in its account a distribution of the trust estate to (1) the defendants Morgan Guaranty and Trust Company of New York, and Thelma V. Brewster, trustees under an inter vivos trust agreement dated March 19, 1959, and (2) the defendants Claire N. Castle, Charles S. Wilcox, and Security Trust Company of Rochester, executors of the will of E. Franklin Brewster, deceased. The plaintiffs claim that neither of the distributees named in the account is entitled to share in the distribution of the trust estate.

The alleged uncertainty of the will, according to the plaintiffs, arises from the language in Paragraph Sixth[1] of the will which directs the trustee,

[1] *"SIXTH:* Upon the death of my beloved wife, MARGARET OWENS BREWSTER, I direct my surviving trustee, subject to the provisions of *Paragraph Four* of this my last Will and Testament, to convey, assign, transfer, deliver, pay over and distribute the whole of the principal of said property and estate so held in trust and any undistributed income thereof free and discharged of all trusts, and I accordingly give, devise, bequeath and appoint as follows: a) To my nephew E. FRANKLIN BREWSTER of c/o Brewster, Gordon & Company, Rochester, New York, sixty (60) per cent. b) To my nephew WILLIAM MACY BREWSTER of c/o Brewster, Gordon & Company, Rochester, New York, forty (40) per cent. c) In the event that either of my said nephews predecease me, the children of such deceased nephew shall take the share of such deceased nephew *per stirpes.* In case either of my said nephews predecease me without children surviving, I give, bequeath and devise the share of such deceased nephew to the surviving nephew or the children of such surviving nephew. d) In the event that neither of said nephews nor any children of either nephew survives me, I give, devise and bequeath said residue and remainder of my estate to the surviving children of my nieces EMILY BREWSTER FRELINGHUYSEN of c/o Brewster, Gordon & Company, Rochester, New York, CAROLINE BREWSTER KNIGHT of c/o Brewster, Gordon & Company, Rochester, New York, SALLIE BREWSTER MULLIGAN of c/o Brewster, Gordon & Company, Rochester, New York, *per capita* and not *per stirpes.* The reason for not making provision in this my last Will and Testament, for my said nieces is that they have prior to the date hereof, received ample bequests from relatives that my nephews did not receive."

on the death of the testator's widow, to transfer a stated percentage of the trust estate, including undistributed income, to each of the testator's two nephews, E. Franklin Brewster and William Macy Brewster. Nothing in the will directs the transfer of such property to an assignee or to the legal representatives of either deceased nephew. Since neither nephew survived the testator's widow, although each survived the testator, no distribution could be made to either of them. Therefore, the will does not expressly specify the persons to whom the trust estate should be distributed. For these and other reasons, according to the plaintiffs, a latent ambiguity exists in the will.

The plaintiffs claim that on March 26, 1936, when he executed his will, the testator was sixty-nine years and four months old and was living with his second wife, Margaret, who was forty-three years and eight months old. He had no children by either of his two marriages. He had been educated for two and one-half years in college, subsequently studied law, and obtained his bachelor of law degree in 1898. For about ten years he had practiced law in New York City and thereafter engaged in business as an importer of foreign steel. At the time of making his will, the testator had retired from business and was the owner of substantial assets consisting of securities having a value of approximately $400,000. He owed substantial sums of money to the Chase National Bank and the Corn Exchange Bank in New York City. The year 1936 was one of economic depression in the United States.

The plaintiffs further allege that during his second marriage and while domiciled in New York, the testator had drawn wills for himself and his wife which they had discussed in detail and in which each spouse left all of his or her property to the

other under a mutual understanding and agreement whereby his wife, if she survived the testator, after making provision for the chauffeur, would bequeath the property previously received from the testator to his two nephews, if they survived her at that time, and, if they were deceased, to their children, and, if there were no such children, to the children of the testator's nieces. About 1935, the testator and his wife moved to Weston, Connecticut.

The plaintiffs allege that the testator was aware of the state and federal inheritance taxes and the costs of administration of both the estate and the trust fund, which he created, and also knew that, after providing for the chauffeur, there was a likelihood that the residue of his estate would not yield the net income sufficient to pay his wife $12,000 per year and that therefore use of the principal of the trust estate would be necessary to support her according to that standard. The plaintiffs also allege that the testator knew that "it was likely that his wife would live until she reached the age of 75 or even longer."

The plaintiffs allege that on March 26, 1936, the testator's next of kin were the five children of his older brother Elisha Franklin Brewster. The children's names were Emily Brewster Frelinghuysen, Caroline Brewster Knight, Sallie Brewster Mulligan (later Davison), Elisha Franklin Brewster, Jr., and William Macy Brewster.

Emily had three children, Emily, Joseph, Jr., and Victoria. Caroline had three children, Ridgway, George, and Diane. Sallie had two children, Carolyn and Wesley. Elisha Franklin Brewster, Jr., had married a third time and had no children born of any of his marriages. William Macy Brewster had been married but had no children.

The plaintiffs further allege that, at the time of his making his last will, the testator knew that three of his nieces had received a substantial inheritance from a great aunt and that his nephews had received nothing. The testator had very infrequent contact with his nephews and nieces or their children. For the most part, his relatives lived distant from Connecticut, and he himself traveled abroad a great deal and consequently had not "bothered" with his relatives. There was no ill feeling or estrangement between them, but they had seen little of each other.

The plaintiffs allege that the testator knew that his wife was younger than either of his nephews, William by a month and Franklin by seven years, and that it was therefore likely that she would survive them. He also knew, according to the plaintiffs, that the children of his nieces were younger than his wife and that it was likely that some or all of them would survive her. He also knew that a substantial part, if not all, of the principal of the trust estate would probably be consumed in paying the $12,000 annuity to his wife. The plaintiffs further claim that no person other than his widow and the chauffeur, Henry Lange, should inherit any portion of the trust estate, unless that person survives the widow as set forth in Paragraph Sixth. They also claim that the will provided that no person who was not related to the testator by blood should inherit any portion of the trust estate; and that the likely exhaustion of the trust estate through invasion of principal for the benefit of the widow would prevent inheritance thereof by any other person.

On December 14, 1970, the date of death of the testator's widow, E. Franklin Brewster and William Macy Brewster, nephews of the testator named in

Paragraph Sixth of the will, had already predeceased her and left no surviving issue, but they had survived the testator's death in 1936. As of December 14, 1970, the plaintiffs contend that the children of the nieces of the testator, the nieces themselves having predeceased the widow, were the next of kin of the testator, namely, the three surviving children of Emily Brewster Frelinghuysen, the two children of Caroline Brewster Knight, and the two children of Sallie Brewster Mulligan.

It is the plaintiffs' claim that the true intent and meaning of the will is that, on the widow's death, distribution of the trust estate must be made to a person or persons surviving the widow and related to the testator by blood. Therefore, the bequests in subparagraphs (a) and (b) of Paragraph Sixth were made to the named nephews only and not to the assignees or to the executors or administrators of a deceased nephew. Furthermore, the testator did not use words showing that they were absolute gifts made without condition, qualification, or limitation as he did in Paragraph Third of the will with respect to a bequest of personal property to his widow.

The plaintiffs also allege that because the trust provided for invasion of principal, it manifested an intention that survival of the widow was a condition of the bequests to his two nephews. Furthermore, because undistributed income of the trust estate could not be determined until her death, this too manifested the testator's intention that the survival of the widow was a condition of the bequests contained in Paragraph Sixth.

Not all of the plaintiffs' allegations have been proved. So many of them as the court deems established will appear hereafter in the course of discussing the various legal aspects.

## II

As always in cases involving construction of a will, it is well to review some of the essential rules laid down by our Supreme Court. In *Connecticut Bank & Trust Co.* v. *Hills,* 157 Conn. 375, 379, the court said that "precedents in the construction of wills or trusts are seldom of persuasive force, since the surrounding circumstances in each case, as well as the precise words employed, usually differ significantly."

The expressed intent of the testator must, of course, be ascertained in the light of the circumstances surrounding him at the time the instrument was executed, but evidence admissible to determine that intent is, nevertheless, limited. See *Perkins* v. *Corkey,* 147 Conn. 248; *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 474. Evidence of intention of a testator is inadmissible where it does not find expression in the will, where it consists of declarations of the testator as to the meaning of the words used, where it seeks to give to the words used a meaning which goes beyond any reasonable construction which they can bear, or where it gives them significance different from their usual and ordinary meaning, unless, on reading the will in the light of surrounding circumstances, a latent ambiguity appears. *Trowbridge* v. *Trowbridge,* supra, 474. The latter case involved a latent ambiguity in the use of the word "issue" where the parties were at odds on whether the word was intended to include an adopted child. See *Beardsley* v. *Merry,* 136 Conn. 573, 576.

The cases speak of ascertaining a testator's intent by "reading the will in the light of surrounding circumstances," and, if a "latent ambiguity" then appears, evidence of the testator's intention may be admissible, not to add to the terms of the will but to explain them, showing to which persons or things

the testator had reference. *McDermott* v. *Scully,*
91 Conn. 45, 48. Without such a latent ambiguity
or equivocation taken in connection with all of the
surrounding facts so as to make doubtful the iden-
tity of the legatee, extrinsic evidence of intention
of the testator is not admissible. As *McDermott*
states (p. 49) : "It cannot be shown that the testa-
tor directed the scrivener to write the will in a form
or with a meaning different from that which appears
in the will, unless there is a latent ambiguity or
equivocation as to the person or subject meant to
be described . . . ." The court proceeds to concede
that the application of the rule against admissibility
of evidence of intention and the exception to it "still
affords matter for controversy" in their application.

The "surrounding circumstances" that may be
considered in will interpretation include, inter alia,
the relations between the testator and a legatee at
the time of execution of the will because they tend
to prove a condition, a fact always relevant and
material when the testator's intent is sought.
Id., 50. Evidence of such "surrounding circum-
stances" is always admissible under the rule of con-
struction of wills, and the operation of the exception
to the rule is not required to make such evidence
admissible. But cf. *Griswold* v. *First National
Bank,* 134 Conn. 410, 417, which seems to speak
differently by requiring a showing of ambiguity
before evidence of surrounding circumstances is
admissible. Also, in *Morehouse* v. *Bridgeport-City
Trust Co.,* 137 Conn. 209, 216, evidence of "sur-
rounding circumstances" at the time of execution
of a will to prove the testator's intention was
excluded because there was no ambiguity found in
the language of the will. See *Hall* v. *Rand,* 8 Conn.
560, 574, where in 1831, the court, in construing a
promissory note, laid down a broad principle of con-
struction of any instrument, summarized in a ques-

tion, "for why seek, by parol, to explain that, which needs no explanation?" The punctuation leaves something to be desired, but the thought is very clear.

Another rule of construction which is also clear is that parol evidence of intent of a testator is inadmissible to supply a possible defect or omission in a will occurring through mistake or inadvertence whether of the testator or the scrivener. *Stearns* v. *Stearns,* 103 Conn. 213, 223. The "latent ambiguity" rule does not permit extrinsic evidence of the testator's intention "which would substitute in place of the term or word another term or word not used by the testator, or add to a term or a clause an omission." Id., 221. In *Stearns,* the plaintiffs sought to extend the meaning of "personal estate" to include as well the residue of the testatrix' real estate. Unless a latent ambiguity exists in words of description of the property intended to be given or the person intended to be the donee, parol evidence to show that the testator "intended a different result from the one which the words of . . . [his] will, taken in their primary sense, would indicate" is not admissible. *Jackson* v. *Alsop,* 67 Conn. 249, 252.

Similarly, where in *Mahoney* v. *Mahoney,* 98 Conn. 525, parol evidence was offered that a testator knew and believed that his daughters never intended to marry, the offer being made in reality for the purpose of striking from the will the phrase "leaving no child or children at the death of my said wife," the evidence was ruled not admissible because it was an attempt to show that the testator intended something different from what the language of the will expressed. The court held that the intention was clearly disclosed in the will and that evidence to vary that intention could not be considered.

In this connection we must also keep in mind another basic rule of construction that the primary meaning of words used is to control unless a clear intent to the contrary appears. *Connecticut Bank & Trust Co.* v. *Hills,* 157 Conn. 375, 382. This is one of the "somewhat contradictory" presumptions referred to in *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 473. Thus, the use of the word "me" could rarely, if ever, be interpreted to mean "us" or to include any other person than the person using the word.

There is also lingering in the background of the entire subject of will and testamentary trust construction the principle which militates against any attempt to defeat the obvious purpose of the Statute of Wills. As the court sets forth in *Waterbury National Bank* v. *Waterbury National Bank,* 162 Conn. 129, 135: "That statute was enacted with the basic purpose of making certain that a testator's intentions as to the disposition of his property should be carried out after his death. It was enacted to obviate the danger of permitting the devolution of property to depend on oral testimony and to reduce the risk of false or fraudulent documents being substituted for those which expressed the testator's true intent." While this case dealt with the doctrine of incorporation by reference in a will, the general principle quoted is, however, relevant to every will construction case where oral evidence is offered. See *Travelers Bank & Trust Co.* v. *Birge,* 136 Conn. 21, 27, where the oral testimony offered sought not to explain any ambiguity but to add new income beneficiaries, i.e., to remake the will.

Still other principles of will construction which may come into play in this case can perhaps be treated best in subsequent portions of this memorandum which discuss specifics of the positions taken by the various parties in their arguments.

This court notes here only one additional general rule well stated in *Weed* v. *Scofield,* 73 Conn. 670, 677, and in this quotation from *Swole* v. *Burnham,* 111 Conn. 120, 122: "In seeking to determine . . . [the testator's] intent, we examine the language of the entire will in the light of the circumstances which surrounded the testator at the time he executed it, *the real question being, not what did the testator mean to say, but what did he mean by what he did say."* (Italics supplied.)

## III

The ultimate question in this case revolves around whether Paragraph Sixth (see footnote 1, supra) of the will created a vested or contingent remainder in the testator's two nephews, E. Franklin Brewster and William Macy Brewster, at the time of the testator's death, the time as of which a will ordinarily speaks. *Gold* v. *Judson,* 21 Conn. 616, 623. The court's task is to ascertain the intention of the testator as set forth in the will read in the light of surrounding circumstances on the date of its execution. For easy reference the order of discussion of the main segments of the case is listed here: (1) The will itself, (2) the significance, if any, of surrounding circumstances, (3) the admissibility of extrinsic evidence of the testator's intention, (4) the significance, if any, of the early vesting rule, (5) the significance, if any, of the presumption against intestacy, (6) the rule relating to gifts by implication, and (7) the question of aggrievement of the plaintiffs, if their interpretation of the will is correct.

(1) The will itself.

Footnote 1, supra, contains Paragraph Sixth verbatim. In essence, the remainder of the will first provides for payment of the testator's debts and then bequeaths to his widow in Paragraph Third all household furniture, furnishings, books, bric-a-

brac, silverware, automobiles, and personal effects "to be hers absolutely." In Paragraph Fourth it provides for payment of premiums on insurance covering the life of his chauffeur, Henry Lange, until its maturity or surrender. In addition, it bequeaths a $1000 annuity payable by the estate in quarterly instalments until the insurance policy matures or is surrendered, or until his chauffeur dies. If the testator's widow predeceases such maturity, surrender of policy, or the chauffeur's death, the executors or trustees are directed to pay a cash lump sum settlement of the annuity payments plus the balance of premiums due on the policy, to terminate the trust, "and [to] distribute any balance remaining to my residuary legatees and devisees as hereinafter named." If the chauffeur remains employed by the widow, the $1000 annual payment is to be considered part of his annual salary while he is thus employed.

The residue of his estate is then placed in trust to pay the above-mentioned sums to the chauffeur and to pay $1000 a month to his widow during her life. If the net income exceeds $13,000 annually, plus the amount of his chauffeur's insurance premiums, the excess is to be applied to reduce his outstanding debts, if any; if none, the excess is to be placed in a special reserve fund up to a total of $25,000 to guarantee the monthly payments to his widow and the payments due to or in behalf of his chauffeur. After this reserve fund is established, all other income is payable to the widow. If the income from the trust is insufficient to make the above payments, principal from the reserve fund and then the trust, in that order, is to be used to meet the payments due.

Other provisions of the will are of a "housekeeping" nature without any special significance to the main issue in this case.

(2) The surrounding circumstances at time of execution.

On March 26, 1936, date of execution of the will, it would appear that the testator was over sixty-nine years of age and that his wife, Margaret, was over forty-three years of age. They had no children. The testator had two and one-half years of college and thereafter obtained his law degree in 1898. He practiced law for about ten years and then became an importer of foreign steel. In 1936, he had retired from business and owned assets consisting of securities worth about $400,000. He was indebted for substantial sums to two New York banks. The year 1936 was one of widespread economic depression. This court can presume that as a lawyer he had some generalized knowledge of state and federal inheritance taxes, the costs of administration of both his estate and his trust fund, and the approximate amount available in his trust fund to pay his wife the designated income after, of course, providing for his chauffeur. It can also be presumed that he recognized the likelihood of invasion of principal of the trust to take care of his widow.

The plaintiffs allege that on March 26, 1936, the testator's next of kin were the five children of his older brother Elisha Franklin Brewster, previously named. It seems that all parties concede that these five persons were the next of kin as of March 26, 1936, and nothing appears to have changed this status as of the date of the testator's death, September 15, 1936, in Weston, Connecticut.

It is apparent also that the testator knew that his three nieces had received a substantial inheritance from a great aunt and that his two nephews had received nothing. The testator had, however, very infrequent contact with any of the nieces and

nephews or their children. For the most part, his relatives lived distant from Connecticut, and the testator himself traveled abroad a great deal and consequently had not "bothered" with his relatives.

The testator must also have known that his nephews were slightly older than his wife, William by a month and Franklin by seven years, and that the children of his nieces were younger than his wife.

(3) The admissibility of extrinsic evidence of the testator's intent.

Thus, on the basis of the language of the will and the "surrounding circumstances" as of the date of execution, the plaintiffs proceed to claim that there is a latent ambiguity (see section I of this memorandum) because the will does not specify clearly the persons to whom the trust estate should be distributed. Stated differently, the plaintiffs' claim is that there appears little doubt as to which of various persons or classes of persons can take under the will under varying conditions but that there is doubt as to which of them are entitled to take here. This is the "ambiguity," in the plaintiffs' minds. They point to the omission in Paragraph Sixth of words of limitation in the gift of the remainder of the trust estate to the nephews which would establish that they were to receive the gift "absolutely" or in fee simple, etc., as compared to the use of such a phrase in Paragraph Third where the wife was given personalty "to be hers absolutely." This omission is the basis for the ambiguity, i.e., whether the nephews were given an absolute or vested estate, or just a contingent estate requiring them to survive the widow in order to receive a vested remainder. The plaintiffs contend that the testator intended only a contingent remainder for the nephews, which never became theirs because they did not survive

the widow. Because the extent of the estate bequeathed and devised to the nephews is in dispute, the plaintiffs contend that there is a "latent ambiguity," which permits the introduction of extrinsic evidence to ascertain the testator's intent.

The plaintiffs aver that *Reaney* v. *Wall*, 134 Conn. 663, 667, 670, proves that a devise without limitation to "my son, William" gives only a life or a defeasible estate, and further support is claimed from *Pond* v. *Porter*, 141 Conn. 56, 65, which reaches a similar result. The difficulty is, of course, that the specific language of the respective wills involved in those cases required a conclusion that the testator intended only life estates. There is, however, language of a different caliber in the instant case. For the same reason, the court cannot accept *Clark* v. *Hartford-Connecticut Trust Co.*, 127 Conn. 101, as shedding any light on the present matter.

Words of inheritance are unnecessary to vest an absolute interest; *Duncan* v. *Higgins*, 129 Conn. 136, 145; *Hartford-Aetna National Bank* v. *Weaver*, 106 Conn. 137, 141; although the omission is a factor to be taken into consideration if the later provisions of the will clearly show that it was the testator's intention to give a lesser estate. *Pond* v. *Porter*, supra, 65.

The plaintiffs point also to a judicial admission in *Brewster* v. *Brewster*, 152 Conn. 228, where the inter vivos trustees under a trust created by William M. Brewster, and the executors under the latter's will sought a declaratory judgment as to whether William had a vested remainder under the will in question here, subject only to defeasance by invasion of principal for the benefit of the testator's widow. Morgan Guaranty and Trust Company and Thelma V. Brewster, who were parties in *Brewster*, are also parties in the present action, but other

parties to the present action were not. Thus, the latter would not, under any circumstances, be bound by any judicial admissions of the plaintiffs in *Brewster* (which was not resolved on the merits), and *Brewster* is therefore of little consequence here except possibly to cast some shadow on the argument of the inter vivos trustees under William's trust. Still this consequence does not conclude the issues here or resolve them for all of the parties.

Furthermore, it is not at all clear that this court is dealing with a "latent ambiguity" when it seeks to construe the kind of estate given to the nephews under Paragraph Sixth. Such an ambiguity would not, by definition, be "patent," i.e., it would not appear on the face of the will, but would come into existence on reading the will in the light of the surrounding circumstances. *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 474–75; see *Morehouse* v. *Bridgeport-City Trust Co.,* 137 Conn. 209, 216, where there was no latent ambiguity of either the subjects or the objects of the testator's intention; *Beardsley* v. *Merry,* 136 Conn. 573, 576.

If this court accepts the surrounding circumstances summarized above in section (2) as proved, there is nothing in them that creates a latent ambiguity in the will or that assists in explaining any language in the will. Under no conditions can evidence of surrounding circumstances do anything more than to explain or to interpret language that may be doubtful in the will. Extrinsic evidence is inadmissible to show an intent not expressed in a will or to insert a devise or bequest not found therein. Such evidence can be only descriptive, not dispositive. *Ministers Benefit Board* v. *Meriden Trust Co.,* 139 Conn. 435, 445. This distinction is one of the reasons why evidence of the testator's conversations and agreements with his wife relative to their mutual intentions for testamentary disposi-

tions of their respective estates was excluded during the trial. Such evidence would have shown a disposition in conflict with the language of the will rather than in explanation of it. So, too, the evidence that the testator had, on the very day of his death, an appointment with his attorney, which would have changed the language of the will significantly by requiring the testator's nephews to survive not merely the testator but also his wife in order to take vested interests in the trust remainder, was excluded. Claimed errors in the drafting of a will, either by the testator or his scrivener, do not permit the introduction of extrinsic evidence. *Griswold* v. *First National Bank,* 134 Conn. 410, 417, where the court held that the provisions of the will were clear and that extrinsic evidence would only establish an intent which would either add to the will something for which its terms afford no reasonable basis or contradict the intent plainly shown; *Central Hanover Bank & Trust Co.* v. *Nesbit,* 121 Conn. 682, 687; *Stearns* v. *Stearns,* 103 Conn. 213, 223.

The plaintiffs would have the court believe further that the surrounding circumstances establish an intention to distribute only to living blood relatives and that therefore all gifts were personal and required survival of the widow. For that reason, vesting was postponed, and the right of the life beneficiary (widow) to invade principal plus the bequest of undistributed income to the remaindermen and the requirement of "delivery and payment" to the remaindermen all added up to prove that the testator's intention was to require his two nephews to survive his widow as well as himself. The plaintiffs assert that all of those facts point to that conclusion. The amount of the remainder or undistributed income could not be ascertained until the widow's death, and "delivery and payment" of the assets made the presence of a living person manda-

tory. The plaintiffs cite *Brown* v. *Potter,* 114 Conn. 441, 444, and *First National Bank* v. *Somers,* 106 Conn. 267, 273, in support of that view, but the facts of both cases are easily distinguishable from the present situation. As *Brown* says (p. 445) : "[P]recedents are usually inconclusive, since the same or substantially similar phraseology of expression seldom occurs in different wills . . . ." Accord, *Hartford National Bank & Trust Co.* v. *Birge,* 159 Conn. 35, 42.

This court needs only point out that vesting of a gift is not precluded by lack of knowledge of the size of the gift. *Duncan* v. *Higgins,* 129 Conn. 136, 138, where "accumulations . . . or so much thereof as may then remain" upon expiration of a life estate created a vested interest; see *Mead* v. *Close,* 115 Conn. 443, 444. Moreover, "delivery and payment" does not require the personal presence of the beneficiary. See *Bronson* v. *Pinney,* 130 Conn. 262, 266, where the words "shall be divided upon termination of a trust" do not import that a legatee must survive a termination of the trust to become entitled to it; *Trowbridge* v. *Townsend,* 112 Conn. 104, 109, where the court construes "pay over and deliver" to mean "transfer." Vesting can occur with such language where the language gives rise to no question of the eventual right to the corpus but merely of the time when, in the testator's opinion, he desires the principal to be paid over. Such words generally denote a postponement of possession and not a gift in futuro. *Bridgeport-City Trust Co.* v. *Lister,* 140 Conn. 147, 155; *Austin* v. *Bristol,* 40 Conn. 120, 133; cf. *First National Bank* v. *Somers,* supra, 273.

Thus, except perhaps for setting out the ages of the testator, his wife, and prospective beneficiaries, the testator's general background, and his rather

tenuous family ties, there is little to be found in the "surrounding circumstances" at the time of execution of the will that explains anything in its language which cannot be obtained from a reading of the will itself. Even if this court concedes that the testator was well aware of the ages of all beneficiaries concerned, it is difficult to ascribe to such knowledge alone an intention different from that disclosed by the plain language of the will, which the testator actually employed to express himself. It must not be forgotten that he was a lawyer by training although he was not in active practice in 1936, and that he allowed the language of the will to remain unaltered up to the day of his death six months after its execution.

(4) The early vesting rule.

Of necessity, several aspects of this trial spill over into several categories of the law. The plaintiffs have raised a multitude of main and subordinate issues, and the court, as far as reasonably possible, has sought to compartmentalize them without excessive overlapping.

A previous subsection considered the "surrounding circumstances" at execution in the light of the plaintiffs' extensive claims that they create a latent ambiguity. The court will later return to the specific language of the will itself after disposing of the few remaining legal questions originally listed at the beginning of section III of this memorandum.

The presumption as to early vesting in will construction cases has long been recognized in Connecticut. *Hartford National Bank & Trust Co.* v. *Birge*, 159 Conn. 35, 43. If a testator's intention is to avoid early vesting, it is very simple to make this intention clear by adding a phrase like "living at his death," or "living at the death of the life beneficiary," or "living at the death of my wife." *Kim-*

*berly* v. *New Haven Bank, N. B. A.,* 144 Conn. 107, 114, and cases cited therein, where it is said that if there is any doubt as to the testator's intention, courts usually hold the gift as vested rather than contingent; *Howard* v. *Batchelder,* 143 Conn. 328, 334; *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 219; *Trowbridge* v. *Townsend,* supra, 111.

The mere creation of a life estate in property does not indicate a testator's intention to postpone vesting to the date of termination of the life estate. It does not necessarily create a contingency or condition or operate to delay vesting in point of right. *Williams* v. *Houck,* 143 Conn. 433, 442.

(5) The presumption against intestacy.

This presumption, like others in the field of will construction, is not a hard and fast rule. It has been applied where a provision in a will is fairly open to two constructions, leaning in favor of that which avoids intestacy. *Hartford National Bank & Trust Co.* v. *Harvey,* 143 Conn. 233, 242; *Bridgeport-City Trust Co.* v. *Lister,* 140 Conn. 147, 156; *Nash* v. *Danbury National Bank,* 138 Conn. 676, 684; *Hartford National Bank & Trust Co.* v. *Yearly Meeting,* 137 Conn. 648, 654. It is presumed that when a testator executes a will, he prefers, whenever possible, not to have any part of his estate devolve by intestacy. If the plain intent of the testator as disclosed by the will is to the contrary, it is, however, the testator's intent that must prevail as against any rule of construction.

The defendants argue that if the plaintiffs' interpretation of the will that the two nephews must survive not only the testator but his widow is correct, then the remainder of the trust estate must devolve by intestate law because the only condition on which the surviving children of the nieces (Emily,

Caroline, and Sallie) could take would be if the two nephews had predeceased the testator. Since they did not predecease him but did predecease his widow, Paragraph Sixth (d) did not become activated, and the determination of next of kin would then have to be made as of the date of the testator's death. This further leads to the question whether the plaintiffs, who are children of the three nieces, would fall into the category of next of kin as of that time, a point challenged by the defendants as not having been proved; and, if not, whether they are aggrieved for the purposes of this appeal. Obviously, the court cannot reach this issue unless it first accepts the plaintiffs' interpretation of the will. In connection with this argument by the defendants, it is interesting to note *Pond* v. *Porter,* 141 Conn. 56, 69, where, in a somewhat similar factual situation, the court said that the alternative bequests never became operative because of the condition attached to them. The same case also dealt with the testatrix' failure to bequeath the remainder interest of a trust for her son. The court believed that she fully intended to give the remainder to his issue but that, in the maze of complicated dispositive provisions, she simply forgot to include it. The court concluded (p. 72): "We must take the will as we find it. We are not permitted to read into it some provision . . . which is not there."

On the face of the will (Paragraph Sixth [d]), it is clear that the testator did not want his three nieces to be beneficiaries because they had previously received ample bequests from relatives which his two nephews had not received. Therefore, if intestacy occurred on the widow's death, depending on the date of her death, it is quite conceivable that the testator's next of kin would be one or more of his nieces whom he expressly sought to exclude from his will. This factor alone would be strong

evidence of an intention not to have any part or the whole of his trust estate devolve by intestacy, without the necessary operation of any presumption against intestacy, which, if anything, would only serve to confirm the manifest intent found in Paragraph Sixth (d). It would, of course, at the same time be an argument in favor of vesting of the interest given to the two nephews.

Thus, if the interest in the trust remainder to the two nephews is contingent on their surviving the widow, and if Paragraph Sixth (a) and (b) are to be read separately from (c) and (d), as the plaintiffs at one point seem to suggest (see infra), and if the gifts over to the children of the nieces in (d) cannot take effect because of the requirement that, in order to do so, the two nephews must have predeceased the testator, which they did not, then the court would be confronted with intestacy and a devolution of the trust remainder to the specifically excluded nieces if they were the next of kin at the time of the testator's death in 1936. On the other hand, if the interest in the trust remainder to the nephews is vested, the court does not face this problem. In actuality, as already indicated, the court cannot, however, take such a segmented view of the various subparagraphs in Paragraph Sixth. They must be read together with the entire will. When so read, if the court reads into that Paragraph the requirement of survival of the widow by the two nephews, as claimed by the plaintiffs, it must read this element in throughout (a), (b), (c), and (d) where applicable. As thus interpreted, the gift over of the trust remainder to the two nephews or their children would be contingent on their surviving both the testator and his widow in all aspects of (a), (b), (c), and (d). Failing such survival by those named in (c), the trust remainder would then be payable to the children of the nieces under (d)

where the interest in the remainder would vest, according to the plaintiffs, whether they survived the widow or not.

This, however, might not necessarily be so if the court were to accept the plaintiffs' view that the omission of words of limitation such as that the gift of the trust remainder was to the nephews "absolutely" (as the testator had stated with reference to personalty given to his widow in Paragraph Third—"to be hers absolutely") signifies only an interest for their lives. (See above section III (3) of this memorandum.) This erroneous interpretation could equally be applied to the gift over under (d) to the children of the nieces where there are no words of limitation used by the testator. If these words of limitation were so vital in establishing the plaintiffs' claim that the trust remainder did not vest unless living blood relatives survived the widow, then the failure to use them in describing the final substitutionary gift to the children of the nieces would at least mean that that gift over was only a life interest, and the trust remainder would be left undisposed of by the language of Paragraph Sixth of the will as a whole. Here again the testator would have been courting intestacy when he executed his will.

This court returns again to the familiar theme that a court seeks the testator's intention as of the time that he executed the will. To say that the testator intended all of the gifts in (a), (b), (c), and (d) to be life interests only or to be contingent for any reason, including the lack of use of words of limitation, would do violence to what he actually said in Paragraph Sixth. He intended this Paragraph to create a vested interest in his two nephews provided that they survived him alone, and, if they did not, then he provided substitutionary gifts, each

of which would vest in the first person or group of persons named in (c) and (d) who did survive him alone, notwithstanding the omission of words of limitation attached to any of the gifts to such prospective legatees in any of the language of (a), (b), (c), and (d).

The discussion in *Gaffney* v. *Shepard,* 108 Conn. 339, 344, on contingent and vested remainders serves to buttress the conclusions reached in this case. The following language (p. 344), is pertinent here: "The law favors a vesting and a provision is not construed as an executory devise or bequest if it can be held to be a remainder; nor as a contingent remainder if it can be held to be vested. . . . Where the beneficiary is certain, and the event upon which he is to take is also certain, but the possession is postponed during the existence of an intermediate estate, there is a present vested remainder."

There are, moreover, other reasons that reveal an intention by the testator not to encourage or to contemplate intestacy but to prefer early vesting. They will be discussed later.

(6) Gifts by implication.

One of the plaintiffs' claims is that the testator intended a gift by implication to the children of the nieces. In *Phoenix State Bank & Trust Co.* v. *Johnson,* 132 Conn. 259, 264, the court said: "When there is no express gift of the use of the property during the life of the person at whose death the remainder takes effect but there are words in the will indicative of an intent to give the life use to that person, a gift to him will be implied if, in view of all the provisions of the will and the surrounding circumstances, the court is convinced that the testator so intended. . . . Most of our decisions in which gifts have been implied fall within this category." *Weed* v. *Scofield,* 73 Conn. 670, 678, puts it

this way: "The probability, indeed, on which is rested a devise or bequest by implication must be apparent, and not a mere matter of conjecture; but it need not, even as against the heir, be necessarily such that from the words employed an intention to the contrary cannot be supposed." In *Weed*, the question revolved around the disposition of the principal of two trust funds for which, the heirs argued, no disposition had been made after the expiration of the life estates.

The rule on gifts by implication is at best a difficult rule to apply. It appears to require so strong a probability of intention that an intention contrary to it cannot be supposed. Such a "strong probability of intention" would seem to have existed in the court's mind in *Pond* v. *Porter*, 141 Conn. 56, 72, where the court stated that it fully believed that the testatrix intended to bequeath the remainder over of a life trust for her son, to his issue, but simply forgot to include such a bequest. Nevertheless, the court refused to recognize the rule of gift by implication, saying instead that "[w]e must take the will as we find it. We are not permitted to read into it some provision for the disposition of the remainder interest . . . which is not there." Ibid. As a result, the gift failed, and the remainder went to a church which, under the will, was the recipient of it as a substitutionary legatee.

The court is not convinced of the intention of the testator to make an implied gift to the plaintiffs as of the date of the execution of the will. Nor do the plaintiffs appear to press this issue with the same avidity as they do the question of the contingency of the nephews' remainder interests. Furthermore, if at the time of the execution of the will the testator intended the nephews to have a contingent rather than a vested remainder, there would be no necessity to think in terms of an implied gift because

the language of Paragraph Sixth (d), with a few simple changes, would then have created an express gift. On the other hand, if a vested remainder were intended, then, of course, it would be futile to think in terms of an implied gift because there would be none to give.

(7) Aggrievement.

For reasons that will hereafter become more apparent, the court does not consider it necessary to decide this issue.

## IV

The court returns now to examine the language of Paragraph Sixth of the will in the light of the foregoing discussion of the general principles involved in its construction. Other parts of the will are summarized in section III (1) of this memorandum. The testator's intent to take care of his widow is paramount after payment of his debts and making some provision for his chauffeur. A reserve fund of $25,000 to protect against lack of adequate income in some years to pay his widow and a further right to invade the principal of the trust for her benefit confirms the testator's primary concern.

The plaintiffs make a segmental analysis of Paragraph Sixth, seeking to ascribe special significance to each subparagraph separately. While this analysis may suit the purpose of their argument, it does not entirely comport with the rule that the will must be read as a whole to derive the intention of the testator.

It is at once manifest that Paragraph Sixth seeks to provide for the termination of the trust fund on the death of the testator's widow by paying over (a) to one nephew sixty percent of whatever remained and (b) to the second nephew the other

forty percent. No words of limitation are stated to describe the gift, i.e., to indicate whether it was absolute or for life or a term of years. As already indicated, such words of art are, however, unnecessary to create a fee simple interest, and, in addition, if the will went no further, the early vesting rule certainly would lead to a construction that the remainder was given in fee to the nephews with the right to possession, but not the vesting, postponed.

These subparagraphs must, however, be read in conjunction with subparagraphs (c) and (d) which create certain substitutionary gifts. Thus, subparagraph (c) provides that "[i]n the event that either of my . . . nephews *predecease* [sic] me" (italics supplied), the remainder is given to the children of the deceased nephew per stirpes. "In case either of my said nephews *predecease* [sic] me without children surviving" (italics supplied), then the deceased nephew's share goes to the surviving nephew or the children of the surviving nephew.

In subparagraph (d), further provision is made that "[i]n the event that neither of said nephews nor any children of either nephew *survives* [sic] me" (italics supplied), then a final substitutionary gift is made to the "surviving" children of the testator's nieces, per capita and not per stirpes. This section also contains the explanation that no provision is made in the will for the testator's nieces because they had already received ample bequests from relatives that the nephews had not received.

The above-italicized words relating to whether the nephews and their children *predecease* or *survive* the testator are mentioned in both subparagraphs (c) and (d). In subparagraph (c), the phrase "predecease me" is used twice, and the phrases "children surviving" and "surviving nephew" are used once and twice respectively. The import of

the word "surviving" in each instance is in relation to the testator's death. The plaintiffs cannot very well contend that the repeated use of these words and phrases involves only typographical errors. These words and phrases are very large bones that stick in the throat of the plaintiffs' entire argument. Obviously, the only contingency with which the testator was concerned at the time of the execution of the will was whether his nephews or their children *predeceased* or *survived* him. In the event that a nephew predeceased him, the first substitutionary gifts were made to the children of such deceased nephew or, if none, to the surviving nephew or the latter's surviving children. Obviously, the testator contemplated the strong likelihood that one or both of his nephews would yet have children, and he made provision for it, but only if either nephew predeceased him. Then, as a final substitutionary gift, if neither nephew survived him and none of their children survived him, he gave the residue of his estate to the children of his nieces. Here again in subparagraph (d), he speaks, however, of one or both of his nephews or their children *surviving him* ("survives me" is the exact phrase). If none of them does, then the residue is given "to the surviving children of my nieces." Here again the import of the word "surviving" is in relation to the testator's death and those children of his nieces then surviving him.

Whether the use of the language mentioned was wise, or whether the testator or his scrivener committed an error, or whether the testator had greater confidence in the fecundity of his nephews and their wives than he should have had, is immaterial for this court's purposes. The testator appears to have been satisfied to have the trust remainder go to his two nephews subject only to one contingency, viz., that they survive him. Nothing is said about the

necessity for their surviving anyone else, including the widow, the life beneficiary of the trust. Therefore, once that contingency of surviving the testator occurred, as it did here, because both nephews were living when the testator died, the remaining substitutionary gifts were no longer effective. As of the testator's death and the nephews' surviving him, their interest in the trust remainder must be construed as having then vested.

While the will does appear to indicate some interest in retaining the proceeds of his wealth within the family blood line, as has been indicated, the testator apparently was satisfied that the probabilities were good that one or both of his nephews would themselves inherit personally or that one or more of their children would inherit in their place. That belief was a calculated risk that did not materialize. Furthermore, even if the nephews survived him and later died without children, it is conceivable that some Brewster blood relatives might have ultimately inherited through the nephews' wills. This, of course, is pure speculation because it is not known what the testator specifically thought and this court is bound to discern his intentions and thoughts only from the will viewed in the light of surrounding circumstances. The court therefore quotes the famous lines of Burns in his poem "To a Mouse": "The best-laid schemes o' mice an' men Gang aft a-gley . . . ."

The speculation just mentioned that even if the nephews survived the testator and thereafter died without children, this might, nonetheless, have resulted in gifts from them to bloodline relatives is, of course, counterbalanced by the opposite possibility. The nephews might have left it all to their wives or others outside the Brewster bloodline. Both of these possibilities might well have been considered by the testator when he executed his will. After all, he was a well-educated, much traveled,

successful businessman as well as a lawyer. Certainly he must have contemplated the several obvious possibilities that vesting of the two nephews' interests would entail. He persisted, however, in using language related to whether they predecease him only and to whether other substitutionary legatees survive him only. The language of Paragraph Sixth read as a whole together with the rest of the will and the surrounding circumstances, short of taking evidence of the testator's intention, on the very day that he died, to revise the import of Paragraph Sixth, leads to one clear conclusion. This court must accept the language of this Paragraph for what it clearly states. The fact that after execution of the will these intentions and thoughts may have changed does not permit the court to read into Paragraph Sixth new, unwritten, and totally unauthenticated and unattested language which it is assured that he was about to promulgate but never did.

Much of the difficulty in will construction cases probably derives from trying to separate foresight and hindsight. Everyone is endowed with the capacity to look back at the past and to correct its errors. The court can only try to examine the will with the same foresight exercised by the testator when he executed the document. Even the plaintiffs concede in one of their several briefs that the will, from their point of view, contains a "defect." They say: "As Mr. Brewster himself became aware, his intent would have been clearer had 'or my wife' followed the words 'predecease me' in each of the two sentences in subparagraph (c); and in subparagraph (d) 'or my wife' should have followed 'survive me'."

This comment in the plaintiffs' briefs perhaps best epitomizes the entire question in this case. The testator was himself a lawyer. Either he or a scriv-

ener who was obviously legally trained drafted the will. If it were the intention of the testator to require the nephews' survival of his widow, only a few words needed to be changed or added to accomplish this purpose. This was not done, and this court cannot now do it for him.

## V

For the reasons indicated, the court finds that the remainder interest in the testamentary trust created under Paragraph Sixth of the will was vested in E. Franklin Brewster and William Macy Brewster as of the date of death of the testator in the percentages set forth in subparagraphs (a) and (b) of that Paragraph and that an account showing distribution thereunder to them, their respective estates, next of kin, or assignees, as the case may be, is correct.

The decree of the Probate Court is affirmed.

## VI

While all counsel tried and argued the case very well indeed, counsel for the plaintiffs especially deserves commendation for an exhaustive presentation of a case loaded with insuperable obstacles. It would be difficult to conceive of any minute aspect of the controversy that he did not explore and analyze thoroughly in his effort to balance the scales of interpretation in favor of his clients. Unfortunately, the applicable law and the will being what they are, he has achieved a moral victory, but his opponents have won the case.